James Oliver Hayden, Petitioner *v.* Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corporation), Respondents.

Argued March 12, 1984, before Judges ROGERS, PALLADINO and BARBIERI, sitting as a panel of three.

*Vincent J. Roskovensky, II,* for petitioner.

*Thomas J. Duman, Reed, Smith, Shaw & McClay,* for respondent, Wheeling Pittsburgh Steel Corporation.

OPINION BY JUDGE PALLADINO, July 3, 1984:

James Oliver Hayden (Claimant) appeals here from an order of the Workmen's Compensation Ap-

peal Board (Board) which reversed a referee's grant of compensation benefits under The Pennsylvania Workmen's Compensation Act (Act).[1] We reverse.

Claimant worked for Wheeling-Pittsburgh Steel Corporation (Employer) from January 28, 1973 until July 13, 1975. During the last eight months of his employment with the Employer, Claimant worked as a furnace inlet man. Claimant's duties as an inlet man consisted of standing in a hole and, by using a long handled spoon, placing a mixture of coal dust, salt and water into a hot pipe. The placing of this mixture into the pipe resulted in an emission of a particulate and gaseous substance to which Claimant was exposed. On July 13, 1975, after approximately one hour on the job during which time Claimant alleges the smoke was heavier than usual, Claimant experienced a burning and scratching sensation deep in his throat and chest which resulted in him not being able to breathe. Claimant reported this incident to his foreman and subsequently went to the plant dispensary. A physician at the dispensary sent Claimant to a hospital where he was told that he had smoke in his lungs and that his condition would dissipate. Claimant's condition worsened, however, and he was unable to return to work.

Claimant filed his claim petition on September 15, 1975, claiming he was totally disabled from an occupational disease as defined in Section 108(q) of the Act.[2] At the scheduled hearing before the referee, Claimant's counsel moved to amend the claim from that of occupational disease to a claim under the general compensation provisions of the Act. The referee granted said motion without objection.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1601-1.

[2] 77 P.S. §27.1(q). Section 108 was added by Section 1 of the Act of October 17, 1972, P.L. 930.

454

After the hearing, the referee made the following relevant findings of fact:

6. Your referee finds as a fact that the Claimant did sustain a compensable injury to his respiratory system on July 13, 1975.

7. That the Claimant submitted three reports and a deposition transcript of Dr. J. D. Silverman in whose opinion the Claimant's response to dust exposure was an unusual one, unique, in the sense that Claimant's response was one of unusual sensitivity that would not involve other employees engaged in the same type of work. Dr. Silverman was unable to substantiate a diagnosis of pneumoconiosis but he did state there was a causal relationship between Claimant's hyper-sensitive reaction to the particulate and smoke exposure in July of 1975 and Claimant's present symptomatology from which the Claimant is totally disabled and quite possibly on a permanent basis. Dr. Silverman's diagnosis of the Claimant's respiratory condition is acute, subacute and chronic bronchitis.

14. That the Defendant submitted reports dated July 2, 1977 and June 27, 1978 of Dr. Raimund Rueger in whose opinion he did not observe any abnormalities in the Claimant's ears, nose, throat, larynx or hypopharynx.

15. That the Defendant further submitted a report dated June 22, 1978 of Dr. John G. Shively in whose opinion the Claimant did have evidence of a functional laryngeal obstruction, mild restriction and possibly some bronchospasm; all of which have resulted in disabling symptomatology of uncertain etiology which Dr. Shively could not attribute to Claimant's

employment or acute inhalation of smoke. Defendant also submitted a deposition transcript of Dr. Shively wherein he testified he could find no organic cause for Claimant's condition which he attributes to bronchospasms and asthma.

The referee then concluded that Claimant had established by competent evidence that he had sustained a work-related injury to his respiratory system which had rendered him totally disabled as of July 13, 1975, and continuing into the future. The Board, however, concluded on appeal that there was no sufficient competent evidence upon which the referee could base a finding that Claimant sustained an injury because the record does not indicate that "there was an infliction of harm, or trauma to the physical structure of the body of the Claimant." The Board further noted that Claimant's condition, diagnosed as acute, subacute and chronic bronchitis, is a disease and not an injury.

Before this Court, Claimant contends that he sustained an injury to his respiratory system which resolved itself into bronchitis and which is a compensable "injury" under Section 301(c) of the Act.[3] The Employer argues, to the contrary, that (1) Claim-

---

[3] 77 P.S. §411. This section reads in pertinent part:

(1) The terms "injury" and "personal injury" as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated, or accelerated by the injury. . . .

(2) The terms "injury", "personal injury", and "injury arising in the course of his employment", as used in this act, shall include, unless the context clearly requires otherwise, occupational disease in section 108 of this act.

. . .

ant's condition is not a compensable "injury" inasmuch as that term is confined to the occurrence of physical harm to the body, and (2) Claimant failed to demonstrate that his occupational disease type of harm is occupational in nature.[4] Thus, the issue presented for our consideration is whether an employment-related disease, which is not an occupational disease as that term is defined in Section 108 of the Act, is nevertheless a compensable "injury" under Section 301(c) of the Act.

Before reaching this issue, it should be noted that in a claim for compensation under the Act, the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). And where, as here, the party with the burden of proof prevails before the referee, and the Board takes no additional evidence, our scope of review is limited to determining whether any constitutional rights were violated or an error of law was committed or whether a necessary finding of fact was unsupported by substantial evidence. *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board*, 70 Pa. Commonwealth Ct. 392, 453 A.2d 370 (1982).

Initially, we recognize that under the 1972 amendments to Section 301(c) of the Act, if the alleged injury occurred on or after May 1, 1972, a claimant need no longer prove an "accident" in order for his injury to be compensable. Injuries are now compensable if

---

[4] To prove that employment-related harm was occupational in nature a claimant would have to show that the disease is causally related to his industry or occupation and the disease incidence is substantially greater in the industry or occupation than in the general population. *Plasteel Products Corp. v. Workmens Compensation Appeal Board*, 32 Pa. Commonwealth Ct. 405, 379 A.2d 908 (1977).

(1) they arise in the course of employment and (2) are related thereto. *Workmen's Compensation Appeal Board v. Jeddo Highland Coal Co.,* 19 Pa. Commonwealth Ct. 90, 338 A.2d 744 (1975). The 1972 amendments have also abolished the requirement of an injury to the "physical structure of the body." In *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.,* 479 Pa. 286, 388 A.2d 659 (1978), our Supreme Court stated: "[I]n common speech the word 'injury,' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system [that] produces harm or pain, or a lessened facility of the natural use of any bodily activity or capacity." 479 Pa. at 297, 388 A.2d at 664 (quoting *Creighan v. Fireman's Relief and Pension Fund Bd.,* 397 Pa. 419, 425, 155 A.2d 844, 847 (1959)).

Moreover, this Court recently held in *Pawlosky v. Workmen's Compensation Appeal Board,* 81 Pa. Commonwealth Ct. 270, 473 A.2d 260 (1984), that when a claim for an occupational disease type of harm is asserted under the general compensation provisions of the Act, a claimant need no longer prove that the harm sustained is occupational in nature. We believe, therefore, that an employment-related disease, which is not occupational as defined in Section 108 of the Act, is nonetheless a compensable "injury" under the Act.

Having concluded that Claimant's bronchitis is an "injury" within the meaning of the Act, Claimant is entitled to compensation because the referee properly found that the injury was related to his employment. Claimant's physician, a specialist in pulmonary disease, testified as follows:

Q. Dr. Silverman, based upon your examination of Mr. Hayden in all of these occasions, are you able to form an opinion about his condition?

A. I felt there was a causal relationship between the episode that he related to me that occurred in July of 1975, and that he has been unable to work since that time.

I felt that his response to dust exposure was an unusual one, unique in the sense that I had to arrive at the conclusion that his response was one of unusual sensitivity that would not apply—and probably did not involve other employes who were engaged in the same type of work.

Q. But you are of the opinion that there was a causal relationship between his exposure to this mixture that he was using on the job and his disabling symptomatology?

A. Right.

Although this testimony was rebutted by the Employer's medical witness, the conflict was resolved by the referee in favor of the Claimant. The referee is the ultimate finder of fact in workmen's compensation cases where the Board has not taken additional evidence. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). It is the referee's function and not this Court's to assess the credibility of witnesses and resolve questions of evidentiary weight. *Id.* at 182, 305 A.2d at 761. Our inquiry is limited to whether the findings of fact are supported by substantial evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

We must hold, therefore, that where as here there is competent medical testimony to support a determination that the employee is disabled by a work-related disease, a referee may properly conclude that

the employee has suffered a compensable "injury" within the meaning of the Act.

Accordingly, we will reverse the Board and reinstate the referee's order.

### ORDER

AND Now, July 3, 1984, the order of the Workmen's Compensation Appeal Board, No. A-80361, reversing the referee's award of benefits in the above-captioned matter is reversed and the referee's award reinstated.