SAMSON PAPER COMPANY & FIDELITY ENGRAVING, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (DIGIANNANTONIO), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 15, 2003.
Decided Oct. 30, 2003.

Jeffrey D. Snyder, Philadelphia, for petitioner.

Brian R. Steiner, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Samson Paper Company (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ) denying the termination petition filed by Employer determining that Juanita Digiannantonio (Claimant) had not fully recovered from her work-related injury, and also determining that Claimant met her

burden of proving that she sustained carpal tunnel syndrome. We affirm.

Claimant worked for Employer as a press feeder which required her to feed between 6,000 and 10,000 pieces of paper into a machine per day with her right hand and then remove them with her left hand. On January 5, 2000, Claimant sustained a work-related injury when she fell off a stool onto concrete while performing her job duties. Employer issued a notice of compensation payable for a neck and back strain.

On February 6, 2001, Employer filed a termination petition alleging that Claimant had fully recovered from her work-related injury as of December 14, 2000. The WCJ conducted a hearing at which Employer presented the testimony of Dr. Evan D. O'Brien and Tony Ordway, a manager for Employer. According to Dr. O'Brien, his examination revealed no objective findings but did believe Claimant's complaints of pain in her neck and arm. Dr. O'Brien opined that Claimant did not need more treatment for her work injury and released her to her pre-injury job as a press feeder although he restricted her lifting abilities based on her subjective complaints of pain. Dr. O'Brien disagreed with Claimant's treating physician that her work injury resulted in carpal tunnel syndrome. Even assuming that she did sustain carpal tunnel syndrome as a result of the work injury, Dr. O'Brien opined that she had fully recovered.

Claimant testified in her own behalf and also presented the testimony of Dr. Kenneth V. Giacobbo. Dr. Giacobbo opined that Claimant had not fully recovered from her work-related injury. He opined that Claimant suffers from chronic cervical strain, bulging herniated cervical disc disease with C5 radiculopathy and sustained bilateral carpal tunnel syndrome as a result of the work incident.

The WCJ credited the testimony of Dr. Giacobbo that Claimant has not fully recovered from her work-related injury and denied Employer's termination petition. The WCJ also determined that in addition to the neck and back injuries Claimant suffered as a result of the work incident, Claimant met her burden of proving that she also sustained bilateral carpal tunnel syndrome as a result of the work incident.

On appeal to this court, Employer initially argues that the WCJ erred in crediting the testimony of Dr. Giacobbo. Dr. Giacobbo testified that as a result of her work-related injury, Claimant had pain in her neck, head, and back and had carpal tunnel syndrome. With respect to her neck, Dr. Giacobbo stated that Claimant has spasticity and tenderness in her cervical spine. Claimant has limited range of motion and is not able to completely turn her head or look up and down. (R.R. at 235a.) Dr. Giacobbo acknowledged that Claimant was in a car accident in 1997, at which time he treated Claimant for a neck problem. Dr. Giacobbo testified, however, that Claimant had recovered from that injury prior to her work-related injury. (R.R. at 236 a.) Concerning the carpal tunnel syndrome, Dr. Giacobbo testified that it was bilateral, and that her symptoms included tingling and numbness. Although Claimant's work required repetitive movement, she was asymptomatic until the work-injury at which time she sustained a trauma to her extremities resulting in a nerve injury and the manifestation of the carpal tunnel syndrome. (R.R. at 241.)

Employer takes issue with Dr. Giacobbo's testimony with respect to Claimant's 1997 motor vehicle accident. Although Dr. Giacobbo testified that Claimant had been fully recovered from that accident at the time she suffered her work-related accident in 2000, Employer claims that there is

no documentation in the medical records that Claimant had fully recovered. Although there was no documentation, it was the opinion of Dr. Giacobbo that Claimant had fully recovered from her 1997 motor vehicle accident. Between 1998 and 2000, Dr. Giacobbo saw Claimant and she had informed him that she was pain free and had returned to work without difficulty. The WCJ is the ultimate finder of fact and may credit the testimony of any witness in whole or in part. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth. 1998).

■ Employer also argues that Dr. Giacobbo relied on incomplete medical records. Specifically, Employer maintains that an x-ray of Claimant's left elbow was taken in December 2000, revealing a fracture, yet Dr. Giacobbo did not know how the fracture occurred. With respect to why Claimant was sent for the x-ray, Dr. Giacobbo stated that the ordering diagnosis suggested that Claimant had pain in her limb. (R.R. at 273–74.) Employer maintains that given the lack of adequate history of Claimant's subsequent elbow injury, the WCJ erred in relying on Dr. Giacobbo's testimony. The fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency. *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391 (Pa. Cmwlth.2001). Moreover, the WCJ found that the left elbow fracture was unrelated to the work injury.

■ Employer also argues that the x-ray and records with respect to the left elbow fracture were incomplete and that the WCJ should have drawn an adverse inference that Claimant had a subsequent

accident that superseded the work injury. In *Holshue v. Workers Compensation Appeal Board*, 84 Pa.Cmwlth. 253, 479 A.2d 42 (1984) the claimant failed to present the testimony of two physicians, despite the integral part they played in his treatment. We determined that it was permissible, albeit not required, for the WCJ to draw the inference that, had the testimony of the doctors been produced, it would have been unfavorable to the claimant. In this case, the WCJ determined that the left elbow fracture was unrelated to the work injury and that Claimant did, in fact, provide Employer with an x-ray report. As such, we find no error in the WCJ not drawing an adverse inference, a choice which is discretionary with the WCJ.

Finally, Employer argues that the WCJ and Board erred in changing the NCP issued to Claimant to include carpal tunnel syndrome. We observe that Dr. Giacobbo, whose testimony the WCJ credited, opined that Claimant suffered carpal tunnel syndrome as a result of her work-related injury, and the WCJ, in his conclusions of law, stated that "Claimant met her burden of proof that in addition to a neck and upper back injury as a result of the work injury of February 5, 2000, she also sustained a mild bilateral carpal tunnel syndrome, right greater than left." (R.R. at 22a.) Because the NCP issued in this case only acknowledged back and neck strain and Claimant did not file a petition alleging carpal tunnel syndrome, Employer argues that the WCJ erred in changing the NCP.

With respect to the NCP, Section 413(a) of the Workers' Compensation Act (Act), 77 P.S. § 771 provides as follows: [1]

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agree-

---

1. Act of June 2, 1915, P.L. 736, *as amended*,     77 P.S. § 771.

ment upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

In *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087, 1091 (Pa.Cmwlth.2001), we stated that "when an employer seeks to terminate a claimant's benefits, neither party can re-litigate the nature of the accepted injury at a subsequent proceeding without first following the proper procedure...." This procedure requires the filing of a review petition seeking to have the description of the injury changed. "The WCJ may also in the course of the proceedings determine that the NCP was incorrect." *Id.*

In *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 819 A.2d 131, 134 (Pa.Cmwlth.2003), we observed that although the WCJ, in accordance with Section 413, has the "power to amend an NCP, that power is limited. A WCJ may modify an NCP when a material mistake of law or fact has occurred; however for Section 413 to apply, the alleged mistake must relate to a fact or condition that **existed** when the agreement expressed in the NCP was executed." (Emphasis in original.)

In this case, although Dr. Giacobbo did not examine Claimant until months after her injury, he nonetheless testified that Claimant's fall at work triggered Claimant's carpal tunnel syndrome. Dr. Giacobbo's review of Claimant's EMG taken after the work accident also revealed carpal tunnel. Although Claimant did not file a petition to have the description of the NCP changed, in accordance with Section 413(a) of the Act, a WCJ may modify an NCP "in the course of proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect." Here, in the course of the proceedings regarding Employer's termination petition, Claimant proved that at the time of her work-related injury she suffered carpal tunnel syndrome as a result of the work-related injury and the WCJ properly amended the NCP to include carpal tunnel syndrome.

In accordance with the above, the decision of the Board is affirmed.

### ORDER

Now, October 30, 2003, the decision of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.